**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| JUAN ESLAVA ROSAS,<br>Petitioner,<br>v.<br>TODD BLANCHE, *et al*.,<br>Respondents. | Case No. 2:26-cv-01444-RFB-BNW<br>**ORDER GRANTING WRIT OF HABEAS CORPUS** |

Before the Court is Petitioner Juan Eslava Rosas's First Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 7). For the following reasons, the Court grants the Petition.

## I. INTRODUCTION

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center in the custody of Immigration and Customs Enforcement ("ICE"). Respondents are detaining Petitioner under 8 U.S.C. § 1225(b)(2)(A). See Fed. Resp'ts' Resp. to Pet'r's First Am. Pet., ECF No. 8 at 1–2 (June 10, 2026) [hereinafter, "Opp'n"].[1] Broadly speaking, this provision of the Immigration and Nationality Act ("INA") authorizes the government to hold *certain* noncitizens in mandatory detention throughout their immigration proceedings.[2]

Petitioner asserts he is a member of the certified class action pending before this Court in

[1] Respondent John Mattos, Warden of Nevada Southern Detention Center, filed a response to Petitioner's First Amended Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioner and takes no position on the Petition's merits. See generally Facility Resp't's Resp., ECF No. 9 (June 10, 2026).

[2] Even when § 1225(b)(2)(A) is properly construed, it is not absolute. Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC (D. Nev.) ("Class Member"). See First Am. Pet. for Writ of Habeas Corpus, ECF No. 7 (June 3, 2026) [hereinafter, "Pet."]; see also generally Jacobo-Ramirez v. Noem,[3] 823 F. Supp. 3d 1182 (D. Nev. 2026) [hereinafter, "Jacobo-Ramirez I"] (certifying a class of undocumented noncitizens who are, or will be, subject to mandatory detention within the District of Nevada under the Executive Branch's reinterpretation of § 1225(b)(2)(A)). Petitioner seeks to enforce his rights as established by this Court in its March 30, 2026, Order, as a Class Member. See Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799 (D. Nev. Mar. 30, 2026) [hereinafter, "Jacobo-Ramirez II"] (granting partial summary judgment in favor of Class Members on their statutory and regulatory claims).

Through the Jacobo-Ramirez judgment, the Court declared that Class Members "are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations"; therefore, they are "not subject to detention under 8 U.S.C. § 1225(b)(2)(A)." Id. at *33. Moreover, on July 30, 2026, the Ninth Circuit vindicated this Court's statutory interpretation. In Rodriguez Vazquez v. Bostock, the Ninth Circuit explicitly rejected the government's contrary statutory interpretation, rendering the application of § 1225(b)(2)(A) as to Petitioner unequivocally illegal within this circuit. See generally Rodriguez Vazquez, --- F.4th ---, 2026 WL 2196424 (9th Cir. July 30, 2026).

Furthermore, this Court set aside (*i.e.*, vacated) Federal Respondents' (a.k.a., "the government") related, unlawful detention policies pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A). See Jacobo-Ramirez II, 2026 WL 879799, at *33. Those policies were captured in: (i.) an internal ICE memorandum issued on July 8, 2025, titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" ("July 8th Memo"), and (ii.) the Board of Immigration Appeals ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter, "Hurtado"]. See Jacobo-Ramirez II, 2026 WL 879799, at *8–9 (discussing the July 8th Memo, which set forth the "formal nationwide policy of DHS and DOJ," and Hurtado, in which the Executive Office for Immigration Review ("EOIR")—*i.e.*, the immigration "courts"—formally adopted this policy).

Petitioner seeks release from detention because Federal Respondents have purportedly

[3] Kristi Noem has since been substituted out for the current Secretary of Homeland Security. See Fed. R. Civ. P. 25(d).

refused to comply with § 1226(a), its implementing regulations, and this Court's class-wide partial summary judgment. See Pet'r's Reply in Support of First. Am. Pet. at 2–5, ECF No. 10 (June 17, 2026) [hereinafter, "Traverse"]. Petitioner also asserts his arrest and detention, without required procedures, violate the Due Process Clause of the Fifth Amendment. See Pet. at 4–16. In response, the government concedes that Petitioner is a Jacobo-Ramirez Class Member. See Opp'n at 1. In doing so, the government "adopt[s] the Jacobo Ramirez Response in full" to assert that "Petitioner's lawful detention under § 1225(b)(2)(A) is mandatory by statute." Opp'n at 1. Federal Respondents do not attempt to justify Petitioner's detention under any other statutory authority, do not provide a meaningful response to Petitioner's due process claim, and do not assert any individualized justification for Petitioner's detention. See id.

As discussed below, the Court finds Petitioner is a Jacobo-Ramirez Class Member, and Respondents have asserted a detention authority that is unlawful as applied to Petitioner. Therefore, his arrest and ongoing detention under § 1225(b)(2)(A) are unlawful under the INA, this Court's declaratory judgment/vacatur, and the law of this circuit. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections required by § 1226(a)'s regulatory scheme violate his constitutional right to due process. Finally, the Court finds the appropriate remedy for Petitioner's unlawful detention—and the government's defiance of Jacobo-Ramirez—is: (i.) immediate release from custody; (ii.) a permanent prohibitory injunction against re-detention under § 1225(b)(2)(A); and (iii.) an order requiring Federal Respondents to follow appropriate procedures if they seek to re-detain Petitioner under § 1226(a).

## II. CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez II, 2026 WL 879799, at *4. The government concedes Petitioner is a Class Member. See Opp'n at 1. Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who was arrested and detained by ICE on February 24, 2026, and he remains detained. See Pet. at 2. Second, he is in removal proceedings before the Las Vegas Immigration Court, *i.e.*, within the District of Nevada. See Order of the Immigration Judge, ECF No. 8-1 at 9–10. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See Notice to Appear, ECF No. 8-1 at 5. Fourth, Federal Respondents are detaining Petitioner under § 1225(b)(2)(A) and they do not assert that he is, or will be, subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opp'n at 1–2. Fifth, Petitioner was most recently arrested well within the country's interior, not while arriving in the United States. See Form I-213, ECF No. 8-1 at 3.

In sum, Petitioner is a Jacobo-Ramirez Class Member, and he entitled to the relief afforded to the Class by this Court. The declaratory judgment entered in favor of Jacobo-Ramirez Class Members has "the force and effect of a final judgment[.]" 28 U.S.C. § 2201(a). In other words, the "declaratory judgment is a real judgment, not just a bit of friendly advice." Badger Cath., Inc. v. Walsh, 620 F.3d 775, 782 (7th Cir. 2010). As parties to Jacobo-Ramirez, Federal Respondents are therefore obligated to comply with that judgment. See Maness v. Meyers, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly."); United Aeronautical Corp. v. U.S. Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023) (citation omitted) ("But in suits against government officials and departments, we generally assume that they will comply with declaratory judgments."). Moreover, Federal Respondents (and this Court) are obligated to abide the Ninth Circuit's binding judgment in Rodriguez Vazquez, which explicitly rejected the government's novel reimagination of § 1225(b)(2)(A) and held that noncitizens like Petitioner fall within the detention regime set out in § 1226, not § 1225(b)(2)(A). See Rodriguez Vazquez, 2026 WL 2196424, at *3 ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the

detention regime of § 1226, not § 1225(b)(2)(A).").

Federal Respondents offer no explanation for their continued reliance on § 1225(b)(2)(A) to detain Class Members in spite of this Court's binding judgment and that of the Ninth Circuit. Their brazen defiance is troubling, unnecessary, and toxic to judicial economy, individual rights, and the rule of law. See Haaland v. Brackeen, 599 U.S. 255, 293 (2023) (citation and internal quotation marks omitted) ("After all, the point of a declaratory judgment is to establish a binding adjudication that enables the parties to enjoy the benefits of reliance and repose secured by *res judicata*."); id. (citation and internal quotation marks omitted) ("This form of relief conclusively resolves the legal rights *of the parties*."). Because Federal Respondents' only basis for detaining Petitioner is § 1225(b)(2)(A), see generally Opp'n, the Court must—once again—reiterate its finding, and the law of this circuit, that his ongoing detention is unlawful under the INA because it is actually governed by § 1226(a) and its implementing regulations, as set forth in Rodriguez Vazquez, and this Court's class-wide declaratory judgment. See Jacobo-Ramirez II, 2026 WL 879799, at *33.

## III. DUE PROCESS

Petitioner also claims that his detention violates due process. See generally Pet.; see Traverse at 4–5. The government does not meaningfully respond to Petitioner's claim but instead argues that his alleged harm is "self-inflicted." Opp'n at 1.[4] However, the Court finds the government's arguments meritless: on the record before the Court, it is clear that Petitioner was not afforded the procedures required by § 1226(a) and its implementing regulations. The Court thus finds that Petitioner's detention violates procedural and substantive due process.

As a threshold matter, Class Members and similarly situated noncitizens are entitled to due process under the U.S. Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez I, 817 F. Supp. 3d at 1053–54. The Due Process Clause

---

[4] Federal Respondents incorporate their response in Jacobo Ramirez, but, importantly, the class-wide due process claim has not been litigated in Jacobo-Ramirez. See Jacobo-Ramirez II, 2026 WL 879799, at *2 ("Plaintiffs also claim that the [government's detention] policies . . . violate their due process rights under the Fifth Amendment (Ground IV), but they do not currently seek summary judgment on thi[s] claim[ ].").

of the Fifth Amendment protects "every one" of the "millions of [noncitizens] within the jurisdiction of the United States" "from deprivation of life, liberty, or property without due process of law. . . . Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection." Mathews v. Diaz, 426 U.S. 67, 77 (1976) (citations omitted); see also Shaughnessy v. U.S. *ex rel.* Mezei, 345 U.S. 206, 212 (1953) (The Due Process Clause guarantees that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.") (emphasis added), superseded by statute on other grounds as stated in Dep't of Homeland Sec. v. Thuraissigiam, 345 U.S. 206 (2020); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted) (Noncitizens who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent."). Hence, the Supreme Court has consistently—and repeatedly—held that the Executive Branch cannot "disregard the fundamental principles" of "due process" while interacting with noncitizens who have "entered the country, and [ ] become . . . a part of its population," even those who are allegedly undocumented. See, e.g., Yamataya v. Fisher, 189 U.S. 86, 101 (1903); see also U.S. v. Raya-Vaca, 771 F.3d 1195, 1203 (9th Cir. 2014) ("This long line of precedent admits no exception: [a noncitizen] who has entered the United States is guaranteed due process protections.").

Physical freedom "lies at the heart" of the Due Process Clause—*i.e.*, an individual cannot be deprived of their physical freedom without due process of law. See Zadvydas, 553 U.S. at 690 (citation omitted). Furthermore, "notice and an opportunity to be heard" constitute the "fundamental features of due process[.]" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) (quoting Miranda v. Garland, 34 F.4th 338, 358 (4th Cir. 2022)). Thus, it follows that when the government subjects Class Members to civil detention without supplying these basic, *fundamental*, procedural safeguards, their actions run afoul of the Due Process Clause.

Meanwhile, § 1226(a) and its implementing regulations set forth a scheme designed to guarantee certain noncitizens with "substantial procedural protections" against the erroneous deprivation of their liberty—as recognized by the Ninth Circuit. See Jacobo-Ramirez II, 2026 WL 879799, at *6 (quoting Rodriguez Diaz, 53 F.4th at 1196). These protections include, but are not

limited to, four key procedures for the purposes of this analysis: (1) service of a notice to appear, which provides critical context as to the basis for detention; (2) any arrest and custody under this provision must be pursuant to a lawfully executed administrative warrant; (3) at the outset of detention, a noncitizen detained under this provision receives an initial custody determination by the agency; and (4) the noncitizen then has an ability to appeal said custody determination—*i.e.*, receive a custody redetermination (bond) hearing before an immigration judge ("IJ"). See Rodriguez Diaz, 53 F.4th at 1201–1202 (detailing the numerous "layer[s]" of due process protections encompassed in Section 1226(a) including "the agency's initial custody determination . . . an initial bond hearing before a neutral decisionmaker . . . and the right to seek a new hearing when circumstances materially change"); see also Jacobo-Ramirez II, 2026 WL 879799, at *6 (discussing the same procedures, in addition to the "notice to appear" and arrest warrant requirements set forth by the statute and regulations); Opp'n at 2 (citing 8 C.F.R. § 236(d)'s initial custody determination requirement).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures and are thus unmoored from any constitutional guardrails. As a result, noncitizens arrested and detained pursuant to policies, like Petitioner, can be indiscriminately arrested by ICE officers in the interior of the country and subjected to months of detention without adequate process.

### A. PROCEDURAL DUE PROCESS

The Fifth Amendment imposes procedural "constraints on government decisions which deprive individuals of" their liberty. Mathews v. Eldridge, 424 U.S. 319, 332 (1976). The specific demands of due process are flexible. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972). To determine them, courts consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail." Mathews, 424 U.S. at 335 (citation omitted); see also Rodriguez Diaz, 53 F.4th at 1203–1207

(reaffirming that the Mathews test is appropriate in the context of immigration detention). After carefully balancing these factors, the Court concludes that they weigh in favor of Petitioner, such that Petitioner's ongoing detention has not—and cannot—satisfy the procedural demands of due process.

*i. Private Interest*

First, the government is depriving Petitioner of his paramount interest in his own physical liberty. See Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (citation omitted) ("[T]he interest in being free from physical detention by one's own government" "is the most elemental of liberty interests."). This interest is especially weighty here, considering the lack of process he has received, and that was available to him at the outset of his detention. See Rodriguez Diaz, 53 F.4th at 1208 ("[I]n evaluating [a noncitizen's] interests under the first prong of [ ] Mathews, . . . [courts] must also consider the process [they] received . . . [and] the further process that was available to [them] . . . ."). Unlike the noncitizen in Rodriguez Diaz, who was afforded the full breadth of procedural protections under § 1226(a), Petitioner's detention under § 1225(b)(2)(A) affords no pre-deprivation process at all as a matter of statute.[5]

Moreover, Petitioner is independently entitled to each of the procedures set forth in § 1226(a) and its implementing regulations. These procedures were specifically designed to protect the liberty interests of certain noncitizens, including Class Members, while preserving agency discretion. As a result, noncitizens that should be subject to § 1226(a) and its accompanying procedures have a liberty interest in the government *following those procedures*. See Trinidad y Garcia v. Thomas, 683 F.3d 952, 956–57 (9th Cir. 2012) (finding that the detailed statutory scheme surrounding extradition has "generate[d] interests cognizable as liberty interests under the Due Process Clause" and an extraditee's "liberty interest under the federal statute and federal regulations entitles him to strict compliance by the Secretary of State with the procedure outlined in the regulations"). The necessary and unique purpose of each procedure is described in detail *infra*, Part III.A.ii.

---

[5] See *infra* Part III.A.ii. for discussion of the specific procedural protections under § 1226(a) that Petitioner has been deprived of under the government's instant application of their unlawful policies.

Further, Petitioner's interest in his own freedom is not diminished by the fact that he could have pursued a post-deprivation bond hearing. Where physical liberty is at stake, pre-deprivation process is necessary, and the lack of such process cannot be cured by the government's ability to conduct a post-hoc bond hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950)); see also Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970) (describing how due process principles require "timely and adequate notice detailing the reasons for a proposed termination" prior to a pre-termination hearing).

*ii. Risk of Erroneous Deprivation*

Second, the risk of an erroneous deprivation of liberty is intolerably high under the government's faulty application of § 1225(b)(2)(A), which contains absolutely no procedural protections. While the government does not need to "undertake every possible effort to mitigate the risk of erroneous deprivation and the potential harm to the private party[,]… the Constitution does require that the government take reasonable measures to ensure basic fairness to the private party and that the government follow procedures reasonably designed to protect against erroneous deprivation of the private party's interests." Kashem v. Barr, 941 F.3d 358, 379 (9th Cir. 2019).

Here, however, the government has acted unreasonably in eschewing its own statutory scheme—a scheme already heavily deferential to agency discretion—to do even less, that is, nothing at all. See Escobar Salgado, 809 F. Supp. 3d at 1161 ("There are no existing procedures whatsoever for [Class Members] to challenge their detention pending the conclusion of their removal proceedings."). Case in point, under the government's interpretation, it does not have to determine whether Petitioner's detention serves a constitutional purpose. The government does not have to provide notice of its custody determination. Nor does the government have to afford Petitioner a meaningful opportunity to challenge the legality of their detention. As this Court has previously explained, this detention scheme epitomizes arbitrariness, as immigration officials have the "sole, unguided, and unreviewable discretion to detain [Class Members]." Id. It stands in stark

contrast to the government's own well-established procedures under § 1226(a), which serve as a safeguard against the erroneous deprivations of liberty. See Rodriguez Diaz, 53 F.4th at 1210 (citation omitted).

Under § 1226(a)'s regulatory scheme, the government must abide by numerous levels of process in arresting and detaining a noncitizen. First, a noncitizen cannot be detained without notice of the basis of their detention *vis-à-vis* a notice to appear ("NTA"), which must also be signed and served by a designated immigration officer. See 8 U.S.C. § 1229(a)(1); 8 C.F.R. §§ 239.1, 1003.15(b)(1). Per the governing regulations, which have been codified into statute at 8 U.S.C. § 1229(a)(1), the NTA must include, *inter alia*, the following information: "(1) [t]he nature of the proceedings against the [noncitizen]; (2) [t]he legal authority under which the proceedings are conducted; (3) [t]he acts of conduct alleged to be in violation of law; (4) [t]he changes against the [noncitizen] and the statutory provisions alleged to have been violated." 8 C.F.R. §§ 1003.15(b)(1)–(4); 8 U.S.C. § 1229(a)(1). Second, a noncitizen who falls within the § 1226(a) statutory scheme cannot be arrested and taken into ICE custody without an administrative warrant,[6] which must be issued, signed, and served by a designated immigration officer simultaneous to, or after, the issuance of an NTA. See 8 C.F.R. §§ 236.1(b); 287.5(c), (e)(2), (e)(3); 287.8(c).

Third, "[w]hen a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," wherein the noncitizen has a *pre-deprivation* opportunity to "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding," such that they can be released on bond and/or supervisory conditions, rather than detained while their removability is adjudicated. Rodriguez Diaz, 53 F.4th at 1196; 8 C.F.R. §§ 236.1(c)(8), (g).

---

[6] This Court previously explained the limited exceptions to this requirement as follows:

> Immigration officers are authorized to make warrantless arrests in *limited circumstances* under the INA. These include when a noncitizen is "entering or attempting to enter the United States in violation of any law or regulation . . . regulating the admission, exclusion, expulsion, or removal of [noncitizens]," or when an officer has reason to believe (i.) the noncitizen is in the United States in violation of such laws or regulations and (ii.) the noncitizen is likely to "escape" before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2); see also 8 U.S.C. §§ 1357(a)(4)-(5) (providing other circumstances that justify warrantless arrest).

Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (emphasis added).

Fourth and finally, a noncitizen has the right to appeal an ICE officer's custody determination through a prompt hearing before an IJ based on individualized evidence, wherein the IJ will order release on bond and/or conditions if the noncitizen establishes that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Rodriguez Diaz, 53 F.4th at 1197 (citation and internal quotation marks omitted); see also 8 C.F.R. §§ 236.1(d)(1), 1003.19. At this hearing, the noncitizen bears the evidentiary burden of overcoming the presumption of detention. See In re Guerra, 24 I&N Dec. 37, 38 (BIA 2006) (allocating the evidentiary burden to disprove dangerousness or flight risk at a bond hearing before an IJ). That is why, when a noncitizen seeks to challenge their detention through a custody *redetermination* hearing (*i.e.*, a bond hearing), the noncitizen has already been provided notice of the legal bases—*at minimum*—underlying the government's custody determination, such that the hearing presents an opportunity to disprove and rebut the agency's determination. See 8 C.F.R. § 236.1(d) (delegating authority to IJs to hear "*[a]ppeals* from custody decisions" upon an application by the detainee "*[a]fter* an initial custody determination" by a designated officer) (emphasis added); see also Mathews, 424 U.S. at 345–46; Opp'n at 2 ("the Immigration Judge has the authority to *redetermine* the amount of bond") (quoting OCIJ Immigration Court Practice Manual, Rule 8.3(a)) (emphasis added).

Taken together, these procedures ensure that the government has a factual and legal basis for determining that a noncitizen's pre-adjudicative detention is necessary; simultaneously, they guarantee that the noncitizen has notice of said basis for their detention and an opportunity to be heard in rebuttal. See Rodriguez Diaz, 53 F.4th at 1210 ("These procedures ensure[ ] that the risk of an erroneous deprivation would be relatively small.") (citation and quotation marks omitted).

Because Petitioner has not been afforded these procedures in full, he faces an excessive risk of erroneous deprivation. Specifically, based on the limited information provided to the Court, the Court finds Petitioner has been deprived of a Form I-200 (Warrant for Arrest), Form I-286 (Notice of Initial Custody Determination), and a bond hearing, at minimum. See Traverse at 4.

For these reasons, the Court additionally finds that the availability of a post-deprivation bond hearing does not cure the risk of erroneous deprivation. Where physical liberty is at stake,

some form of pre-deprivation process—akin to § 1226(a)'s procedural guardrails—is necessary. See Loudermill, 470 U.S. at 542 ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'") (emphasis added) (quoting Mullane, 339 U.S. at 313); Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569–70 (1972) (footnote omitted) (Where liberty is "implicated, the right to some kind of prior hearing is paramount."); Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982) ("Absent the necessity of quick action by the State or the impracticability of providing any predeprivation process, a post-deprivation hearing [ ] would be constitutionally inadequate.") (internal quotation marks omitted) (citing to over a half dozen Supreme Court precedents that support this conclusion). The government has identified no impracticality nor necessity nor other extraordinary circumstance that would justify their failure to supply pre-deprivation process here. Thus, the government's ability to conduct a post-hoc bond hearing, which would occur after Petitioner was already subjected to procedures that do not adequately guard against arbitrary detention, makes no difference—a finding our sister district courts have already made in this same context:

> Indeed, given the nature of the constitutional violation [Petitioner] sustained here—*i.e.*, Respondents' failure to conduct any kind of individualized assessment *before* detaining him—any post-deprivation review by an immigration judge would be inadequate. This is particularly so given that [d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (internal quotations and citation omitted); see also Zaitsev v. Warden, Adelanto, No. 2:26-cv-00454-SPS-AGS, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026) ("[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing.") (internal quotation marks omitted).[7]

---

[7] Moreover, if a noncitizen appeals their custody redetermination decision to the BIA, see 8 C.F.R. § 1003.38, it is unclear whether that noncitizen would remain subject to § 1226(a)'s procedures and standards, even if the IJ conducted the custody redetermination under pursuant to § 1226(a). While Hurtado is vacated within this district by Jacobo-Ramirez II—and Hurtado's statutory interpretation has been rendered unlawful in six circuits and counting, see generally Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th

In sum, § 1226(a) and its implementing regulations set forth procedural safeguards that work together to significantly reduce the risk of erroneous deprivation. For thirty years, these procedures have consistently been applied to individuals like Petitioner, affording them notice and an opportunity to be heard and, thereby, protecting them against arbitrary detention.[8] Indeed, the government's failure to provide these procedures flies in the face of the Ninth Circuit's finding that § 1226(a)'s procedural scheme comports with the demands of our Constitution. See Rodriguez Diaz, 53 F.4th at 1209–10.

*iii. Government's Interest*

Third, the government's interest in enforcing immigration law, and presumed interest in detaining noncitizens who are dangerous and/or a flight risk, are served, and not unduly burdened, by the longstanding procedural protections that were typically afforded to noncitizens like Petitioner. See Escobar Salgado, 809 F. Supp. 3d at 1161–62. The government has, for years, demonstrated its ability to adequately administer the regulatory scheme set forth in § 1226(a) to the satisfaction of its own interests. Moreover, the procedural requirements of § 1226(a) *reduce* the fiscal and administrative burden of civil immigration detention by limiting detention to noncitizens who are actually dangerous or a flight risk. See id. at 1162 ("[T]he Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing [ ] procedures serves the government's and public's interest by *reducing* the fiscal and administrative burdens attendant to immigration detention."); see also Jacobo-Ramirez II, 2026 WL 879799, at *30 ("Recent estimates by the federal government find that supervised release

---

Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Rodriguez Vazquez, 2026 WL 2196424 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026)—the BIA has taken no action to stay, reverse, or otherwise enjoin Hurtado nationwide. Thus, treatment of noncitizens like Petitioner under § 1225(b)(2)(A) remains "good law" in the eyes of the BIA. For that reason, this Court has little faith that a noncitizen would be afforded coherent procedural protections that comport with the INA, the law of this Circuit, and due process if forced to seek an appeal of an adverse § 1226(a) custody redetermination decision before the BIA.

[8] Even when compared to other mandatory detention provisions of the INA—which apply to noncitizens arrested within the interior of the country (like Petitioner) and not while arriving at its borders—individuals detained under § 1225(b)(2)(A) are uniquely deprived of procedural protections, namely pre-deprivation notice and a timely opportunity to challenge the government's basis for their arrest and detention, as, for example, based on a mistake of fact. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (2003) (describing the availability of a "Joseph hearing," which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)," and where "the detainee may avoid mandatory detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I&N Dec. 799 (BIA 1999)).

programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted). Similarly, the public interest is served by the procedures under § 1226(a), as these limit the "substantial societal costs" that "unnecessary detention imposes" by "separat[ing] families and remov[ing] from the community breadwinners, caregivers, parents, siblings[,] and employees." Hernandez-Lara v. Lyons, 10 F.4th 19, 33 (1st Cir. 2021) (citation omitted).

### B. Substantive Due Process

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959–60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)) (citation omitted). Civil immigration detention violates a noncitizen's substantive due process rights except in certain "special and 'narrow' nonpunitive 'circumstances,' [see] Foucha v. Louisiana, 504 U.S. 71, 80 (1992), where a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" Zadvydas, 533 U.S. at 690 (citation modified) (quoting Kansas v. Hendricks, 521 U.S. 346, 356 (1997)). To date, the government has not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Thus, the Court finds that his detention violates substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates procedural and substantive due process and is, therefore, unconstitutional.

## IV. REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to months arbitrary detention in violation of his statutory and constitutional rights, as well as the Jacobo-Ramirez judgment. Thus, the Court's task is to determine the appropriate remedy for these violations. See Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) (citation omitted) ("Federal

courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion to the remedy as law and justice require . . . ."); Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243) (same). For the following reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

As previously stated, Respondents have asserted that 8 U.S.C. § 1225(b)(2)(A)—and its associated procedures, or rather, lack thereof—governs Petitioner's detention. Respondents have explicitly disavowed any reliance on 8 U.S.C. § 1226(a), including its implementing regulations and associated procedures, as the authority that governs Petitioner's detention, despite numerous rulings from this Court—and six circuit courts—which reach the opposite conclusion. See Jacobo-Ramirez, 2026 WL 879799, at *34–35 (collecting cases); see also generally Barbosa da Cunha v. Freden, 175 F.4th 61 (2d Cir. 2026); Lopez-Campos v. Raycraft, 175 F.4th 713 (6th Cir. 2026); Rojas v. Olson, --- F.4th ---, 2026 WL 2198315 (7th Cir. July 30, 2026); Rodriguez Vazquez, 2026 WL 2196424 (9th Cir. July 30, 2026); Santillan Quiroz v. Mullin, 180 F.4th 1226 (10th Cir. 2026); Hernandez Alvarez v. Warden, 175 F.4th 1258 (11th Cir. 2026). The Court thus finds that Respondents have relied upon unlawful statutory authority for Petitioner's arrest and continued detention with no indication that they have applied the proper detention authority, 8 U.S.C. § 1226(a), or the procedures required therein as to Petitioner.

Moreover, the Court finds that, to the extent Respondents have afforded Petitioner *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full, as required by the statute, its implementing regulations, and this Court's declaratory judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31; see also Rodriguez Diaz, 53 F.4th at 1201–1202. Despite being ordered to do so, Federal Respondents have not produced a Form I-286 Initial Custody Determination or Form I-200 Administrative Warrant as to Petitioner, or certified that such documents are not in their possession, custody, or control. See Order Appointing Counsel, ECF No. 3 at 3 (May 13, 2026). The Court finds that the government's failure to produce these materials is a concession that they do not exist as to Petitioner, and he was not afforded procedures required by the INA and its implementing regulations. See Jacobo-Ramirez II, 2026 WL 879799, at *31 ("Class Members are subject to

detention under § 1226(a) and its implementing regulations. [Respondents] must therefore comply with 8 C.F.R. §§ 236.1(b); 236.1(c)(8) in arresting and detaining any Class Member.”).

On that basis, the Court finds Petitioner’s detention has been “unlawful from its inception because ICE detained [him] under the wrong statute and without affording [him] any notice or process whatsoever, much less the procedures due under Section 1226(a).” Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025) (ordering a noncitizen’s release on this basis and finding that a subsequent “bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue[.]”); see also Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *3–4 (D. Nev. Apr. 6, 2026) (finding “the legal authority to arrest and detain a noncitizen under § 1226(a) derives entirely from the I-200 [administrative warrant]’s compliance with governing regulations[,]” such that a noncitizen was entitled to immediate release in the absence of a proper warrant). In the absence of a warrant and an initial custody determination—which establishes a lawful basis for detention in the first instance—a subsequent bond hearing “is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip” Petitioner of his freedom. See Lopez Benitez, 795 F. Supp. 3d at 497 (citations omitted). Immediate release is thus the appropriate remedy for Federal Respondents’ “detain first, justify later” approach to Petitioner’s liberty, which mangles § 1226(a)’s regulatory framework and the basic demands of due process.

This remedy is particularly appropriate today, as Respondents are openly defying Jacobo-Ramirez and the binding mandates it set forth. The Court issued its declaratory judgment, and vacated ICE’s mandatory detention policy, on March 30, 2026. See Jacobo-Ramirez II, 2026 WL 879799, at *33. Despite the Jacobo-Ramirez judgment, Respondents have still failed to provide Petitioner with the procedural protections he is entitled to—namely, an initial custody determination, arrest pursuant to a lawful administrative warrant, and a bond hearing. Thus, Petitioner’s detention is void *ab initio* under the INA.

In fact, Federal Respondents confessed that they are not conducting initial custody determinations or issuing Form I-286 notices of initial custody determinations to Class Members—

even though they acknowledge that this Court's prior order requires them to do so. See Hr'g Tr. at 17:22–20:10, Jacobo-Ramirez, No. 2:25-cv-02136-RFB-MDC (D. Nev. June 1, 2026) (ECF No. 157). The Form I-286 is especially significant because it is served on the detainee at the outset of their detention and supplies them with a formal mechanism[9] to immediately request a custody *redetermination* hearing—*i.e.*, a bond hearing. See id. Importantly, by refusing to issue Form I-286 notices, Federal Respondents are depriving Class Members—like Petitioner—of the ability to immediately and efficiently request a bond hearing in immigration court. As Federal Respondents have explained, the only process currently available for a detained Class Member to request a bond hearing is by mailing a written request to EOIR from their detention center. See id. at 22:17–30:30. Class Members receive no instructions regarding how to do so. See id. But If ICE had conducted an initial custody determination and served the Form I-286 Notice upon Petitioner's arrest consistent with 8 C.F.R. § 236.1, he could have immediately requested a bond hearing by simply checking a box.[10]

Moreover, as discussed above, see *supra* Part III.A, a custody redetermination hearing without pre-deprivation process flouts the regulatory scheme that empowers IJs to hear "*[a]ppeals* from custody decisions" "*[a]fter* an initial custody determination." 8 C.F.R. § 236.1(d) (emphasis added). Accordingly, since ICE continues to enforce its vacated policy, any post-deprivation bond hearing before an IJ does not comply with § 1226(a)'s regulations, or—by extension—the Jacobo-Ramirez judgment.

Federal Respondents do not assert that their continued enforcement of a policy that has been vacated under the APA (and their blatant disregard for Petitioner's rights as a Class Member) is legally defensible. Instead, they are unabashedly exploiting the fact that, absent coercive class-

[9] Specifically, the Form I-286 features a box which a detainee may mark to immediately request a bond hearing at the outset of their detention.

[10] Indeed, Federal Respondents maintain that Petitioner was not deprived of adequate process because he failed to request a bond redetermination proceeding. Notwithstanding the fact that a bond redetermination proceeding alone is insufficient procedure under § 1226(a) and its implementing regulations, Respondents have not produced a Form I-286 as to Petitioner—the vehicle by which Petitioner could have requested a bond redetermination hearing. Respondents argue that a single line on Petitioner's Form I-213 constitutes an initial custody determination, see Opp'n at 3, but do not explain how this is an adequate substitute for a Form I-286, which provides evidence that an officer, did in fact, conduct such a determination, and affords noncitizens both notice and ability to request a custody redetermination. Thus, the Court finds that Federal Respondents' failure to follow their own regulations, see 8 C.F.R. § 236, violates Petitioner's due process rights.

wide relief, the Court cannot coerce their compliance on a class-wide basis through its contempt power. Consequently, in this—and countless other habeas matters filed by Jacobo-Ramirez Class Members—the government, which has yet to appeal Jacobo-Ramirez, is disturbing the longstanding assumption that the government will comply with a declaratory judgment unless it is stayed or vacated. See United Aeronautical Corp., 80 F.4th at 1031. More fundamentally, the government is rebelling against a basic principle underlying our constitutional republic: "an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings." U.S. v. United Mine Workers of Am., 330 U.S. 258, 293 (1947) (footnote omitted).

Granted, the declaratory judgment establishes Petitioner's rights but, standing alone, is not a self-executing command. See Steffel v. Thompson, 415 U.S. 452, 471 (1974) (footnote omitted) (A declaratory judgment "is not ultimately coercive; noncompliance with it may be inappropriate, but it is not contempt."). In the absence of contempt, Federal Respondents have made clear that they will not voluntarily abide by this Court's Order in Jacobo-Ramirez. Consequently, Petitioner requires an appropriate remedy in this habeas proceeding, backed by the Court's contempt power, to give effect to his clearly established rights as a Class Member.

Finally, in fashioning this remedy, the Court is cognizant of Federal Respondents' broader indifference toward the rule of law. To elaborate, Federal Respondents have engaged in a systemic pattern of noncompliance with this Court's orders in related habeas matters, even though those orders *are* backed by the Court's contempt power. These violations include, *inter alia*: removing petitioners from the District of Nevada; failing to release petitioners as ordered; disregarding deadlines; failing to provide constitutionally adequate bond hearings; and imposing unlawful release conditions. See, e.g., Jimenez Gomez v. Dep't of Homeland Sec., No. 2:26-cv-00922-RFB-DJA, 2026 WL 1164736, at *2–3 (D. Nev. Apr. 29, 2026) (collecting examples).[11] Of course,

---

[11] Since the Court's decision in Jimenez Gomez, the Court has become aware of numerous other instances of Federal Respondents violating this Court's explicit orders. See, e.g., Order Granting Mot. to Extend & Directing Pet'r's Return to this Dist. at 1–2, Sira v. Bondi, Case No. 2:26-cv-00828-RFB-DJA (D. Nev. Apr. 21, 2026) (ECF No. 8) (finding that the government transferred Mr. Sira beyond this judicial district in violation of a court order); Order Directing Pet'r's Return to this Dist. at 2, Cortez Diaz v. Blanche, 2:26-cv-01056-JAD-NJK (D. Nev. Apr. 29, 2026) (ECF No. 10) (same); Min. Order, Yanes-Quijada v. Mattos, Case No. 2:26-cv-01221-RFB-NJK (D. Nev. May 7, 2026) (ECF

Respondents' folly is not without consequences. "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners" and squanders this Court's finite resources. Id.

For all these reasons, the Court will not ratify the government's lawless conduct by ordering a bond hearing for Petitioner. While ordering a bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, under these circumstances, the Court declines to prolong Petitioner's unlawful detention any further. Ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications," such that it would not remedy the harms Petitioner has suffered. Zheng v. Rokosky, 826 F. Supp. 3d 545, 563 (D.N.J. 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (citation omitted) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) (citation omitted) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Moreover, ordering a bond

---

No. 16) (finding that the government: (i.) failed to certify a lawful basis for Mr. Yanes-Quijada's detention in response to an order to show cause and (ii.) failed to comply with a document production order); Diaz v. Mattos, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026) (finding that Mr. Diaz remained in detention in violation of the Court's Order); Order Enforcing Writ of Habeas Corpus at 10–11, Cruz Perez v. Blanche, No. 2:26-cv-00315-RFB-DJA (D. Nev. May 15, 2026) (finding that an IJ failed to apply the appropriate evidentiary burden at a court-ordered bond hearing in violation of the Court's conditional writ); Order Enforcing Writ of Habeas Corpus at 2–4, Malta De Sa v. Noem, No. 2:26-cv-00594-RFB-MDC (D. Nev. May 19, 2026) (ECF No. 25) (finding that the government unilaterally imposed burdensome release conditions on Mr. Malta De Sa, in spite of this Court's explicit order prohibiting them from doing so); Alfaro Cruz v. Bernacke, No. 2:26-cv-00080-RFB-BNW, 2026 WL 1414096, at *3–4 (D. Nev. May 20, 2026) (finding that the government "obviously failed to comply with this Court's conditional writ" because it improperly placed the burden of proof on Mr. Alfaro Cruz); Status Report at 2, Bibiano v. Blanche, 2:26-cv-00927-RFB-BNW (D. Nev. May 25, 2026) (ECF No. 19) (footnote omitted) ("Federal Respondents have repeatedly violated court orders in this district requiring them to provide advanced notice of release to counsel."); Min. Order, Changyi v. Leyva, 2:26-cv-01280-RFB-MDC (D. Nev. June 3, 2026) (ECF No. 18) (conceding "Pursuant to this Court's [ ] Order, Respondents were ordered to immediately release Petition . . . . If Petitioner remains in detention, Respondents are in violation of this Court's Order."). Unfortunately, this list is far from exhaustive.

hearing would provide Federal Respondents with yet another opportunity to violate this Court's orders and due process.[12]

The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. See Munaf v. Geren, 553 U.S. 674, 693 (2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioner under § 1226(a), Federal Respondents must provide him with *a pre-deprivation* bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing—as a matter of due process—where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioner's rights to date.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 7) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioner from detention on his personal recognizance on **August 29, 2026** between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice

[12] In related habeas matters where the Court has issued a conditional writ, which afforded Federal Respondents an opportunity to cure a petitioner's unlawful detention through a constitutionally adequate bond hearing, Federal Respondents have repeatedly defied the dictates of those orders, requiring post-judgment enforcement. See, e.g., Diaz v. Mattos, No. 2:26-cv-00926-RFB-BNW, 2026 WL 1270816, at *6 (D. Nev. May 9, 2026); Order Enforcing Writ of Habeas Corpus at 10–11, Cruz Perez v. Blanche, No. 2:26-cv-00315-RFB-DJA (D. Nev. May 15, 2026) (ECF No. 31); Salazar-Lopez v. Mullin, No. 2:26-cv-00871-RFB-MDC, 2026 WL 1414066, at *3 (D. Nev. May 20, 2026); Alfaro Cruz v. Bernacke, No. 2:26-cv-00080-RFB-BNW, 2026 WL 1414096, at *4 (D. Nev. May 20, 2026).

Tower lobby during the release window.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must return Petitioner's personal property, including any personal identification and employment authorization documents, **UPON HIS RELEASE.** If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioner during the pendency of his current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioner under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **September 1, 2026**, confirming Respondents' compliance with this Order, including: (i) the date and time of Petitioner's release; (ii) compliance with this Court's directives concerning release on personal recognizance; and (iii) the return of Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** August 28, 2026.



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**